## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

**MARK A. STOUT**,                                      Case No. 3:12 CV 1415

       Petitioner,                                    Judge Donald C. Nugent

       v.                                                  REPORT AND RECOMMENDATION

**WARDEN, TOLEDO CORRECTIONAL**
**INSTITUTION**,

       Respondent.                                    Magistrate Judge James R. Knepp II


### INTRODUCTION

This action is initiated by *pro se* Petitioner Mark A. Stout, a prisoner in state custody, seeking a writ of habeas corpus under 28 U.S.C. § 2254 ("Petition"). (Doc. 1). Petitioner was granted leave to file an amended Petition instanter correcting certain procedural defects. (Docs. 3, 6). Respondent, Ed Sheldon,[1] filed a Return of Writ (Doc. 9) and Petitioner filed a Reply[2] (Doc. 17). Also pending before the Court is Petitioner's Motion to Add More Proof of Addresses and request for evidentiary hearing (Docs. 1, 18), which Respondent opposed (Doc. 19). This matter has been referred to the undersigned for a Report and Recommendation pursuant to Local Rule 72.2(b)(2) (non-document entry dated January 10, 2013). For the reasons discussed below, the undersigned recommends the Court dismiss the Petition and deny Petitioner's Motion to Add More Proof of Addresses and request for an evidentiary hearing.

### FACTUAL BACKGROUND

For purposes of habeas corpus review of state court decisions, "the state court's factual

---

1. Ed Sheldon is the Warden of the Toledo Correctional Institution in Toledo. (Doc. 9, at 1).
2. Petitioner used "traverse" to identify what is currently referred to as a "reply". *See* Advisory Committee Notes (1976) to Rule 5 of Rules Governing Section 2254.

findings are presumed correct unless rebutted by the habeas petitioner by clear and convincing evidence." *Moore v. Mitchell*, 708 F.3d 760, 775 (6th Cir. 2013); 28 U.S.C. § 2254(e)(1). "This presumption of correctness applies even to factual findings made by a state court of appeals based on the state trial record." *Mitzel v. Tate*, 267 F.3d 524, 530 (6th Cir. 2001). The Third District Court of Appeals set forth the following facts:

> At trial, the victim testified that Stout was her biological father and that when she was eight years old, during one of her visits with her father at his trailer, her father started touching her inappropriately. In particular, the victim stated that Stout touched her "private area" and used his fingers both outside and inside her "private area." In addition, the victim testified that her father also had touched her breasts. The victim stated that she would tell her father to stop and that sometimes he would stop, but other times, he would still put his fingers inside of her despite her telling him to stop. The victim said that these incidents occurred more than five times, and that he had done so even after she had turned ten years old. Moreover, she said that all of these incidents took place in her father's bedroom, and that she would either be on his bed or on a "little chair in his room." The victim stated that she was always fully clothed, typically in a tank top and shorts or sweat pants, and that her father would touch her either on top of her clothes or would put her [sic] hands underneath her clothes when he put his fingers inside of her.

> In addition to the victim's testimony, the State also introduced State's exhibits 3 and 4 into evidence, which were audio recordings of the interviews conducted by law enforcement with Stout. In the interviews, Stout repeatedly tells the law enforcement officer that he cannot recall doing any of the acts alleged by the victim. However, Stout also repeatedly tells law enforcement officers that he does not think his daughter would lie about something like this, and at one point he tells them "if she's saying it happened, I ain't gonna call her a liar," and at another time Stout also tells them, "I ain't gonna call her a liar. She never lied to me, so why would she lie about this?" In addition, at another point during the interview, Stout admits that about two years ago his daughter told him that while they had been sleeping in the same bed, he had touched her breasts. When asked about why he continued to have his daughter sleep in the same bed as him despite knowing about this incident, Stout replied, "I thought I never did touch her again. She never said nothing more."

(Doc. 9-1, at 158-60).

## STATE COURT CONVICTION

On May 26, 2010, a Hardin County Grand Jury issued an indictment charging Petitioner with two counts of rape under Ohio Revised Code Section 2907.02(A)(1)(b), two counts of sexual battery under § 2907.03(A)(5), three counts of gross sexual imposition under §§ 2907.05(A)(4), (C)(2), and one count of gross sexual imposition under § 2907.05(B). (Doc. 9-1, at 4-6). The indictment alleged one set of crimes occurred on or about December 2, 2005 through December 2, 2007, and another on or about December 3, 2007 through April 6, 2010. (Doc. 9-1, at 4-6).

Through counsel, Petitioner entered pleas of not guilty and not guilty by reason of insanity. (Doc. 9-1, at 7). Petitioner requested a psychiatric evaluation, waived his right to a speedy trial, and following a hearing, was found competent to stand trial. (Doc. 9-1, at 9, 13, 14; Doc. 13, at 14).

*Pro se*, Petitioner wrote a letter to the court seeking to fire his attorney and to have new counsel appointed. (Doc. 9-1, at 16). Based on that letter, Petitioner's counsel moved to withdraw. (Doc. 9-1, at 17). The court held a hearing on the matter, after which Petitioner's request for new counsel and counsel's motion to withdraw were withdrawn. (Doc. 9-1, at 21; Doc. 13, at 34).

Through counsel, Petitioner moved for separate trials because the charges involved two alleged victims. (Doc. 9-1, at 23). Petitioner also asked that plea negotiations be entered on the record. (Doc. 9-1, at 27). After a hearing, the State moved to dismiss from the indictment two counts of gross sexual imposition involving a second alleged victim, which the trial court granted. (Doc. 9-1, at 29; Doc. 13, at 42). Petitioner withdrew his plea of not guilty by reason of insanity and the case proceeded to a jury trial. (Doc. 9-1, at 30).

3

On November 3, 2010, Petitioner was found guilty of two counts of rape, two counts of sexual battery with the additional finding that the victim of the offense was less than thirteen years old, and two counts of gross sexual imposition. (Doc. 9-1, at 39). On November 5, 2010, the trial court sentenced Petitioner to serve an aggregate sentence of life plus ten years in prison. (Doc. 9-1, at 42). In addition, Petitioner was classified as a Tier III Child Victim Offender. (Doc. 9-1, at 48).

### DIRECT APPEAL

Represented by counsel, Petitioner filed a timely notice of appeal to the Third District Court of Appeals on November 9, 2010. (Doc. 9-1, at 51). Petitioner raised three assignments of error:

1. The Defendant received ineffective assistance of counsel, where counsel failed to move for a mistrial, where information concerning another alleged victim was presented to the jury when that information was highly prejudicial to the Defendant and it had been determined prior to trial that such information would not be admitted.

2. The trial court erred in failing to grant appellant's Criminal Rule 29 motion to dismiss [] all of the charges at the conclusion of the state's case and at the conclusion of the evidence.

3. The jury erred to the prejudice of the Defendant-Appellant by finding him guilty of rape, sexual battery, and gross sexual imposition.

(Doc. 9-1, at 67). The state filed a response. (Doc. 9-1, at 98).

On July 18, 2011, the Court of Appeals issued an opinion and judgment entry overruling each of Petitioner's assignments of error and affirming the judgment of the trial court. (Doc. 9-1, at 146).

4

## DELAYED APPEALS TO THE OHIO SUPREME COURT

On October 19, 2011, proceeding *pro se*, Petitioner filed a Notice of Appeal and Motion for Leave to File a Delayed Appeal with the Ohio Supreme Court. (Doc. 9-1, at 162, 165). On November 30, 2011, the Ohio Supreme Court summarily denied leave to appeal and dismissed the case. (Doc. 9-1, at 187).

On January 30, 2012, Petitioner, proceeding *pro se*, filed a second Notice of Appeal and Motion for Leave to File a Delayed Appeal to the Ohio Supreme Court. (Doc. 9-1, at 188, 191). On March 21, 2012, the Ohio Supreme Court summarily denied leave to appeal and dismissed the case. (Doc. 9-1, at 211).

## POST-CONVICTION RELIEF

### *Motion to Vacate or Set Aside Judgment*

On August 29, 2011, proceeding *pro se*, Petitioner filed a Petition to Vacate or Set Aside Judgment of Conviction or Sentence in the Hardin County Court of Common Pleas. (Doc. 9-1, at 212). There, Petitioner raised the following claims:

1.  All evidence was not shown at trial. Hospital reports was not shown at trial for one thing.

2.  I wasn't aware of a life imprisonment or charges about [alleged victim]. I did not live in that trailer till 2008. When I went to the Sherriff Office in Kenton, Ohio, Det. Lynn Vermilion never told me I was facing a life sentence and I was told she wanted to speak to me about [alleged victim's sister]. [Alleged victim] testified that it always happened in that trailer since 2005.

(Doc. 9-1, at 213-14). In response, the State filed a Motion to Dismiss the Petition. (Doc. 9-1, at 216). On September 12, 2011, the court overruled the petition because it was untimely and the requested relief did not meet either exception to the filing requirement. (Doc. 9-1, at 221). Petitioner did not appeal.

5

***Motion to Vacate Void Judgment Pursuant to*** **Lafler v. Cooper**

On October 11, 2012, proceeding *pro se*, Petitioner filed a Motion to Vacate Judgment Pursuant to *Lafler v. Cooper*, 132 S. Ct. 1376 (2012) (finding a defendant's sixth amendment right to counsel extends to the plea-bargaining process). (Doc. 9-1, at 223). There, Petitioner argued he was denied effective assistance of counsel because his attorney did not adequately warn him of the risks of not accepting a plea deal; failed to present exculpatory evidence at trial including a physical examination of the victim and evidence of the Defendant's place of living, both of which he alleged were made available to counsel at the time of trial; and failed to move for a mistrial after allegedly prejudicial statements were made in front of the jury. (Doc. 9-1, at 224-32). The State filed a Motion to Dismiss. (Doc. 9-1, at 233). On October 26, 2012, the court overruled and dismissed Petitioner's motion without a hearing pursuant to *State v. Magg*, 3rd Dist. No. 5-08-35, 2009-Ohio-90. (Doc. 9-1, at 240). Petitioner did not appeal.

### PETITION FOR HABEAS CORPUS

On June 6, 2012, Petitioner filed a Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus (Doc. 1), asserting three grounds for relief:

> **Ground One**: The Petitioner received ineffective assistance of trial counsel in violation of his sixth and fourteenth amendment rights to the U.S. Constitution and for the following two instances of inadequate performance.
>
> **Sub-claim 1:** Counsel failed to move for a mistrial, when information concerning another alleged victim was presented to the jury when information was highly prejudicial to the Defendant and it had been determined prior to trial that such information would not be admitted.
>
> **Sub-claim 2:** The attorney failed to present exculpatory evidence at trial such as the fact that I did not live in the trial until 2008 contradicting the victim's testimony.
>
> **Ground Two**: Insufficient evidence exists to support the Petitioner's convictions in violation of his Fourteenth Amendment Rights of the U.S. Constitution.

6

**Supporting facts**: There was no physical evidence of any form. The testimony of the minor child was vague and contradictory at best there is mention of a physical exam but none was ever submitted at trial. There is nothing in record to support when she reported any incidents or who she reported them to, raising many questions in regards to what influence led the child to make these accusations. She could not remember any dates these incidents took place. The state has not proven the essential element of sexual conduct or contact or that these incidents occurred prior to the age of ten.

**Ground Three**: The Miranda Waiver and Inculpatory statements provided by the Petitioner were not knowingly and voluntarily given due to the deception by the detective in violation of his Fifth, Sixth, and Fourteenth Amendments Rights to the U.S. Constitution.

**Supporting facts**: The detective tricked me into coming down to talk with her by falsely stating that she had a few questions for me about [the alleged victim's sister]. In reality, the detective was really investigating accusations of misconduct against [the alleged victim]. I would not have spoken to the detective if I had known the real nature of the investigation. I was never informed that I was facing a life sentence; I was never told the "assistant" the detective wanted me to talk to was a trained interrogator; I had never been arrested for a felony before so my experience with the justice system is limited.

(Doc. 1, at 5-9).[3]

## JURISDICTIONAL ISSUES

In determining whether to issue a habeas writ, the standards set forth in the Antiterrorism and Effective Death Penalty Act (AEDPA) govern the district court's review of a state court decision. *French v. Jones*, 332 F.3d 430, 435-36 (6th Cir. 2003), *cert. denied*, 540 U.S. 1018 (2003); 28 U.S.C. § 2254. Before a reviewing court may decide a habeas writ on the merits, a

---

3. At the end of his Reply, Petitioner raises law and argument relating to ineffective assistance of counsel during plea-bargaining. (Doc. 17, at 17-22). Attached to his Reply, Petitioner included various documents with handwritten notes calling to attention purported errors in the investigation or trial. (Doc. 17-1). However, the undersigned declines to consider these arguments, to the extent an argument is made, because arguments not first raised in a Petition are not properly before the Court. *Tyler v. Mitchell*, 416 F.3d 500, 504 (6th Cir. 2005) (holding a district court may decline to review a claim that a party raises for the first time in his traverse).

petitioner must overcome the one-year statute of limitations promulgated by AEDPA. *Allen v. Yukins*, 366 F.3d 396, 399 (6th Cir. 2004), *cert. denied*, 543 U.S. 865 (2004).

Here, conviction became final on September 1, 2011 – 45 days after the Third District Court of Appeals issued its decision affirming the trial court's judgment. (Doc. 9-1, at 146). Petitioner had one year to file his federal habeas petition. The instant Petition was filed on June 6, 2012, within the allotted year, and therefore appears timely filed. (Doc. 1).

***Procedural Default and Exhaustion***

Reasons of federalism and comity generally bar federal habeas corpus review of "contentions of federal law . . . not resolved on the merits in the state proceeding due to [the] failure to raise them there as required by state procedure." *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977).

> When a petitioner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991). Procedural default occurs when a petitioner fails to present fairly to the highest state court his claims in a federal constitutional context. *O'Sullivan v. Boerckel*, 526 U.S. 838 (1999); *Anderson v. Harless*, 459 U.S. 4 (1982). Moreover, a failure to present a claim to the highest court in the state deprives a federal court hearing a habeas petition of jurisdiction on that issue. *See McKeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000).

If the state argues a petitioner has procedurally defaulted his claims, the court must conduct a four-step analysis to determine whether the petitioner has indeed defaulted and, if so, whether the procedural default may be excused:

> First, the federal court must determine whether there is a state procedural rule that is applicable to the petitioner's claim and whether the petitioner failed to comply with that rule. Second, the federal court must determine whether the state courts actually enforced the state procedural sanction – that is, whether the state courts actually based their decisions on the procedural rule. Third, the federal court must consider whether the procedural rule is an adequate and independent state ground on which the state can rely to foreclose federal review of a federal constitutional claim. . . . Fourth, if the federal court answers the first three questions in the affirmative, it would not review the petitioner's procedurally defaulted claim unless the petitioner can show cause for not following the procedural rule and that failure to review the claim would result in prejudice or a miscarriage of justice.

*Williams v. Coyle*, 260 F.3d 684, 693 (6th Cir. 2001) (citing *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986) (internal citations omitted).

Furthermore, a petitioner must fairly present any claims to the state courts in a constitutional context to exhaust state remedies. *Anderson*, 489 U.S. 4; *Picard v. Connor*, 404 U.S. 270 (1971); *Shoultes v. Laidlaw*, 886 F.2d 114, 117 (6th Cir. 1989); *see also* 28 U.S.C. § 2254(b)(1)(A). "[O]nce the federal claim has been fairly presented to the state courts, the exhaustion requirement is satisfied." *Picard*, 404 U.S. at 275; *see also Harris v. Rees*, 794 F.2d 1168, 1174 (6th Cir. 1986). A petitioner must "invok[e] one complete round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at 845. If a petitioner fails to present a claim to the state courts and no state remedy remains available, he has procedurally defaulted that claim. *See Gray v. Netherland*, 518 U.S. 152, 161-62 (1996); *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006).

Here, each of Petitioner's claims is procedurally defaulted. As further explained below, Ground One, sub-claim one is procedurally defaulted because Petitioner failed to timely appeal

to the Ohio Supreme Court and failed to timely file a petition for post-conviction relief. Ground One, sub-claim two is procedurally defaulted because Petitioner failed to timely file a petition for post-conviction relief and failed to raise the claim on direct appeal. Ground Two is procedurally defaulted because Petitioner failed to timely appeal to the Ohio Supreme Court. Ground Three is procedurally defaulted because Petitioner failed to timely file a petition for post-conviction relief and failed to raise the claim on direct appeal.

**Ground One, sub-claim one and Ground Two**

In Ground One, sub-claim one, Petitioner argues he received ineffective assistance of counsel because trial counsel failed to move for a mistrial when the alleged victim's sister's name was said in front of the jury. (Doc. 1, at 6). In Ground Two, Petitioner argues there was insufficient evidence to convict. (Doc. 1, at 7). However, both claims are procedurally defaulted because he failed to timely appeal the Third District's decision to the Ohio Supreme Court.

Applying *Maupin*, the applicable state procedural rule is the requirement to timely appeal to the Ohio Supreme Court. In this case, the Third District Court of Appeals issued its decision on July 18, 2011. (Doc. 9-1, at 146); 785 F.2d 135. Under Ohio Supreme Court's Rules of Practice, Petitioner had 45 days from that date to appeal the appellate court's decision, or until September 1, 2011. Ohio S. Ct. Prac. R. 6.01(A)(1). However, Petitioner did not file a notice of appeal or motion to file a delayed appeal in the Ohio Supreme Court until October 19, 2011. (Doc. 9-1, at 162, 165).

Under the second prong, the Ohio Supreme Court is presumed to have relied on Petitioner's procedural default. Indeed, without explanation, the court denied Petitioner's motion to file a delayed appeal. (Doc. 9-1, at 187). The Court takes the Ohio Supreme Court's silence to mean it was actually enforcing the procedural bar. *Simpson v. Sparkman*, 94 F.3d 199, 203 (6th

10

Cir. 1996) ("we will assume that had the state court addressed petitioner's . . . claim, it would not have ignored its own procedural rules and would have enforced the procedural bar.").

Concerning the third prong, the Sixth Circuit has held the Ohio Supreme Court's unexplained entry denying a motion for delayed appeal constitutes an independent state procedural rule sufficient to bar federal habeas corpus. *Bonilla v. Hurley*, 370 F.3d 494, 497 (6th Cir. 2004). The court explained:

> The Ohio Supreme Court Rules require a motion for a delayed appeal to state "the date of entry of the judgment being appealed and adequate reasons for the delay." Ohio Sup. Ct. R. II, Section 2(A)(4)(a). In addition, the motion must be accompanied by a supporting affidavit and a "copy of the decision being appealed." *Id.* A motion for a delayed appeal is not required to contain the actual claims and supporting arguments sought to be presented on appeal. *Id.* Instead, only when "the Supreme Court grants a motion for delayed appeal," is the appellant required to "file a memorandum in support of jurisdiction." Ohio Sup.Ct. R. II, Section 2(A)(4)(c). Thus, the applicable Ohio court rules indicate that the denial of a motion for a delayed appeal is a procedural ruling, not a ruling on the merits.

*Id.*; *Stone v. Moore*, 644 F.3d 342, 348 (6th Cir. 2011) ("a state procedural rule [can] serve as an adequate state ground for preventing review of a habeas petitioner even if the state procedural rule accords courts broad discretion").

Accordingly, Ground One, sub-claim one and Ground Two are procedurally defaulted unless Petitioner can demonstrate cause and prejudice or a miscarriage of justice exists.

***Ground One, sub-claim one; Ground One, sub-claim two; Ground Three***

As previously stated, in Ground One, sub-claim one, Petitioner argues ineffective assistance of counsel for counsel's failure to move for a mistrial. (Doc. 1, at 6). In Ground One, sub-claim two, Petitioner argues he was subjected to ineffective assistance of counsel because exculpatory evidence was not presented at trial. (Doc. 1, at 6). In Ground Three, he argues he did not voluntarily waive his *Miranda* rights and his statements to the police were not voluntary.

11

(Doc. 1, at 8). Petitioner raised these claims in two post-conviction motions for relief filed in the Hardin County Court of Common Pleas. (Doc. 9-1, at 213-14, 224-32). However, Petitioner failed to timely file a post-conviction petition; thus, these claims are procedurally defaulted.

Here, the applicable state procedural rule is the requirement to timely file for post-conviction relief. Petitioner's trial transcript was filed in the Third District Court of Appeals on January 31, 2011. (Doc. 9-1, at 217, 221). Petitioner thus had 180 days – until July 30, 2011 – to file his petition for post-conviction review. Ohio Rev. Code § 2953.21(A)(2). However, Petitioner did not file his post-conviction motions until August 29, 2011 and October 11, 2012; both after the deadline to file. (Doc. 9-1, at 212, 223).

Under the second prong, the Hardin County Court of Common Pleas relied on Petitioner's procedural default. Indeed, in his first motion for post-conviction relief, the trial court noted Petitioner's application was untimely under § 2953.21(A)(2) and Petitioner failed to meet any exception. (Doc. 9-1, at 221). In the second motion, the state court followed *State v. Magg*, 3rd Dist. No. 5-08-35, 2009-Ohio-90[4] to overrule and deny Petitioner's motion without a hearing. (Doc. 9-1, at 240). Therefore, in both instances, the court "clearly and expressly" stated it was relying on a state procedural ground for its decision. *Coleman*, 501 U.S. at 735.

Thirdly, Ohio's timeliness requirement for post-conviction petitions is an adequate and independent state law ground. *See*, *e.g.*, *Davis v. Warden*, 2009 WL 1162888, *4 (S.D. Ohio) ("Certainly reasonable statutes of limitations protect a state's interest in finality in criminal cases and no federal court has held the statute applicable to 2953.21 petitions is unreasonable."); *Townsend v. Gansheimer*, 2009 WL 589332, *7 (N.D. Ohio) ("petitioner failed to file the

---

4. In *State v. Magg*, the Third District Court of Appeals relied on §§ 2953.21 and 2953.23 to hold a trial court does not have jurisdiction over an untimely petition for post-conviction relief.

12

petition within the time limits set out by Ohio Revised Code § 2953.21, a recognized ground for procedural default."); *Bohannon v. Brunsman*, 2006 WL 2860985, *10 (S.D. Ohio) ("The state ground relied on by the Court of Appeals [ – Revised Code – § 2953.21 – ] was also 'adequate' because it was firmly established by statutory amendment, which became effective September 21, 1995, and was regularly followed in Ohio long before petitioner's trial and conviction occurred." (collecting cases); *Norris v. Schotten*, 146 F.3d 314, 332 (6th Cir. 1998); *Mapes v. Coyle*, 171 F.3d 408, 421 (6th Cir. 1998).

Therefore, Grounds One and Three are procedurally defaulted unless Petitioner can demonstrate cause and prejudice or a miscarriage of justice exists.

### Ground One, sub-claim two and Ground Three

Finally, Petitioner compounded his procedural default by failing to fairly present his claims in Ground One, sub-claim two and Ground Three to the state courts at all appropriate levels. Indeed, Petitioner failed to raise Ground One, sub-claim two and Ground Three in the court of appeals; either on direct appeal or on appeal from his post-conviction motions for relief. By failing to fairly present these claims in a state proceeding, Petitioner has failed to exhaust his state remedies with respect to them. *Picard*, 404 U.S. at 275.

### Cause and Prejudice

Petitioner claims he did not comply with procedural requirements because the law library was too crowded, he had a learning disability, and was reluctant to ask for help due to the nature of the crimes for which he was convicted. (Doc. 1, at 5, 6, 10, 12). However, these reasons are insufficient to establish cause to excuse his procedural default. *Bonilla*, 370 F.3d at 498 (lack of trial transcript, unfamiliarity with the English language, failure to comply with technical

requirements, and short time for legal research in prison do not establish cause to overcome procedural default).

Next, Petitioner argues his appellate attorney provided him with late notification of the appellate court's decision. (Doc. 1, at 12). However, he failed to properly raise an ineffective assistance of appellate counsel claim; therefore, it cannot excuse his procedural default.

To this end, the Sixth Circuit has found an appellate attorney's failure to inform a petitioner of the outcome of his case can amount to "constitutionally deficient performance" and cause for procedural default. *Smith*, 463 F.3d, at 433 n.4, 434. But, *Smith* also recognized that "[a] claim of ineffective assistance of counsel must be presented to the state courts as an independent claim before it may be used to establish cause for procedural default." *Bleigh v. Brunsman*, 2012 U.S. Dist. LEXIS 25919, at *33 (S.D. Ohio 2012) (quoting *Smith*, 463 F.3d at 436, n.7); *Barkley*, 240 F. Supp. 2d at 715 ("Because [petitioner] failed to present this claim [of ineffective assistance of appellate counsel] as an independent claim to the state courts, it cannot constitute cause for [petitioner's] procedural default of his habeas claim.").

Here, Petitioner cannot establish cause for his procedural default because he failed to file an application to reopen his appeal under Ohio R. App. P. 26 (B), "which would have been the proper method of bringing an ineffective assistance of appellate counsel claim." *Bleigh*, 2012 U.S. Dist. LEXIS 25919, at *33-34; *State v. Murnahan*, 584 N.E.2d 1204 (Ohio 1992).

In other words, Petitioner's claim of ineffective assistance of appellate counsel cannot serve as cause to excuse procedural default of other claims because it is itself procedurally defaulted. To this end, in his first Motion for Leave to File Delayed Appeal in the Ohio Supreme Court, Petitioner argued his procedural default should be excused because his appellate counsel did not timely inform him of the Court of Appeals' decision. (Doc. 9-1, at 166-170). However,

14

"raising a claim for ineffective assistance of appellate counsel in a discretionary appeal to the Ohio Supreme Court, without addressing the claim through Ohio Appellate Rule 26(B), does not satisfy the exhaustion requirement unless the Ohio Supreme Court addressed the issue on the merits." *Goldberg v. Maloney*, 692 F.3d 534, 538 (6th Cir. 2012). Here, the Ohio Supreme Court denied jurisdiction and summarily dismissed the appeal. (Doc. 9-1, at 187).

Not only is Petitioner's ineffective assistance of appellate claim unexhausted, it is procedurally defaulted because it can no longer be raised in state court. Under Ohio App. Rule 26(B), Petitioner had 90 days from the date of the Court of Appeals' decision to raise a claim for ineffective assistance of appellate counsel. However, Petitioner did not raise the claim and does not argue he could currently raise the claim. Further, because he raised the claim on discretionary appeal to the Ohio Supreme Court, he cannot argue he was unaware of its existence. Where "an unexhausted claim would be procedurally barred under state law, that claim is procedurally defaulted for purposes of federal habeas review." *See Alley v. Bell,* 307 F.3d 380, 385 (6th Cir.2002); *Goldberg*, 692 F.3d at 538 n.3; *Murray v. Carrier*, 477 U.S. 478, 479 (1986).

All in all, Petitioner did not fairly present a claim for ineffective assistance of appellate counsel to the state courts because he never filed an application to reopen appeal under Ohio App. Rule 26(B) and the Ohio Supreme Court did not decide his case on the merits. Therefore, ineffective assistance of appellate counsel cannot serve as cause for Petitioner's procedural default as it is itself procedurally defaulted. *Beuke v. Houk*, 537 F.3d 618, 631 (6th Cir. 2008) ("ineffective-assistance [of appellate counsel] can serve as cause to excuse the procedural default of another habeas claim *only* if . . . the ineffective-assistance claim was not itself procedurally defaulted.") (internal quotations and citations omitted).

15

Because Petitioner has not shown cause, the Court does not reach the issue of prejudice. *See Barkley*, 240 F. Supp. 2d, at 714 ("When a petitioner fails to show cause 'for not asserting his ineffective assistance of appellate counsel claim properly in the Ohio courts, a federal court may not reach the merits of the *habeas* claim.'") (quoting *Coleman*, 244 F.3d at 540).

Thus, Petitioner has not shown cause or prejudice to excuse his procedurally defaulted claims.

***Actual Innocence***

Where a petitioner "fails to show cause and prejudice for procedural default, a habeas court may still consider the barred claim 'in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent.'" *Ross v. Berghuis*, 417 F.3d 552, 556 (6th Cir. 2005) (quoting *Murray*, 477 U.S. at 496). Here, Petitioner claims his procedural default is excused under the "fundamental miscarriage of justice" or "actual innocence" exception, although he does not clearly maintain he is innocent. *Souter v. Jones*, 395 F.3d 577, 588-89 (6th Cir. 2005); *Schlup v. Delo*, 513 U.S. 298 (1995).

The miscarriage of justice standard requires the district court to make a probabilistic determination about what reasonable, properly instructed jurors would do. Thus, a petitioner does not meet the standard unless he persuades the district court that in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt. *McCray v. Vasbinder*, 499 F.3d 568, 571-72 (6th Cir. 2007) (quotations omitted); *see also Souter*, 395 F.3d at 602.

> This standard does not require absolute certainty about the petitioner's guilt or innocence: A petitioner's burden at the gateway stage is to demonstrate that more likely than not, in light of the new evidence, no reasonable juror would find him guilty, beyond a reasonable doubt – or, to remove the double negative, that more likely than not any juror would have reasonable doubt.

16

*McSwain*, 287 Fed. App'x at 458-59. "The *Schlup* standard is demanding and permits review only in the 'extraordinary' case." *House v. Bell*, 547 U.S. 518, 538 (2006) (quoting *Schlup*, 513 U.S. at 327). The petitioner must present *new evidence* of innocence that is so strong a reviewing court cannot have confidence in the outcome of the trial. *Schlup*, 513 U.S. at 327. New evidence may be "exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial." *Id*. at 324. Actual innocence does not mean actual innocence in the practical sense of the term; rather, actual innocence, if proven, is a "gateway" that allows courts to reach the merits of other claims that would otherwise be defaulted. *Schlup*, 513 U.S. at 316.

Here, Petitioner was convicted for crimes which occurred between December 2, 2005 and December 2, 2007 and December 3, 2007 and April 6, 2010. In his Petition, he claims he did not move into his trailer until 2008, which, if true, could at least discredit witness testimony that the crimes occurred in the trailer before 2008 and at most, partially exculpate him. (Doc. 1, at 5). In response, Respondent argues Petitioner failed to present any new reliable evidence of actual innocence. (Doc. 9-1, at 13, 14-15). Upon review of the record, the undersigned agrees.[5]

First, Petitioner's own statements indicate the evidence is not new. For example, in his second petition for post-conviction relief filed with the Hardin County Court of Common Pleas, Petitioner challenged his attorney's decision not to present evidence about whether he lived in the trailer, even though he claims the evidence was available to counsel at the time of trial. (Doc. 9-1, 231). In his habeas Reply, Petitioner says evidence regarding his place of living was "made available to counsel befor[e] trial", including witnesses who could have testified regarding the

---

5. For the reasons discussed below, the undersigned disregards the evidence contained in Petitioner's motion to expand the record (Doc. 18).

same. (Doc. 17, at 23). By his own account, the evidence was available as early as the time of trial.

Beyond Petitioner's statements, common sense suggests Petitioner would have had access to evidence concerning his residence at trial, on direct appeal, on two appeals to the Ohio Supreme Court, and on two motions for post-conviction relief. However, Petitioner failed to present any such evidence until he filed his habeas Petition. In sum, Petitioner has not presented new evidence of innocence that is so strong a reviewing court cannot have confidence in the outcome of the trial. *Schlup*, 513 U.S. at 327

What is more, the record suggests Petitioner never maintained his innocence. Rather, he argues he does not remember the events in question, ostensibly because he was a heavy drinker. (Doc. 9-1, at 159; Doc. 1, at 17; Doc. 13, at 313, 318-321). The absence of a clear declaration of innocence cautions the Court against applying the actual innocence exception.

Thus, because Petitioner has not maintained actual innocence and has not presented any new, reliable evidence to substantiate his claim that he did not live in the trailer until 2008, the undersigned declines to extend the miscarriage of justice exception to Petitioner's claims.

### MOTION TO EXPAND THE RECORD

Petitioner filed a Motion to Add More Proof of Addresses and attached a 2005 income tax return, 2006 W-2 Tax Statements, and a 2008 cable statement. (Doc. 18). Petitioner's motion is properly construed as a Motion to Expand the Record.

Habeas Rule 7 permits federal habeas courts to "direct the parties to expand the record by submitting additional materials relating to the petition", Rules Governing § 2254 Cases, Rule 7, 28 U.S.C. foll. § 2254 (2010), but expansion of the record is not mandatory and "is left to the discretion of the trial judge". *Ford v. Seabold*, 841 F.2d 677, 691 (6th Cir. 1988), *cert. denied*,

18

488 U.S. 928 (1988). "[A]ny petition seeking relief under § 2254(d) – whether under subsection (d)(1) or (d)(2) – must rely solely on the evidence presented to the state courts." *Parker v. Warden*, 2013 U.S. Dist. LEXIS 47569 (N.D. Ohio) ("The Magistrate Judge correctly recognized that review in habeas proceedings is limited to the record before the state court, and the habeas court cannot consider the contents of outside discovery for claims previously adjudicated on the merits in state courts.") (internal citations omitted). In *Cullen v. Pinholster*, 131 S. Ct. 1388, 1399-1400 (2011), the Supreme Court found that when considering whether a state court's decision was contrary to federal law under § 2254(d)(1), the federal habeas court can only consider evidence that was before the state court. Indeed, the Supreme Court found "[i]t would be strange to ask federal courts to analyze whether a state court's adjudication resulted in a decision that unreasonably applied federal law to facts not before the state court." *Id.* at 1399. Therefore, because a federal habeas court's review is limited to the record in existence at the time of the state court adjudication, evidence introduced only in federal habeas proceedings is irrelevant.

Under this framework, the Court must deny Petitioner's motion because the documents were only first introduced during the habeas proceeding. In other words, although Petitioner argued he did not live in the trailer until 2008 in state court, he did not present the evidence he now seeks to introduce at that time. (Doc. 9-1, at 213-14). Accordingly, this evidence falls outside the scope of federal habeas review.

Even if the Court were to consider the additional evidence in an abundance of caution, it would not change the fact that Petitioner's claims are procedurally defaulted. Indeed, the Court would reach the same conclusion because the evidence Petitioner submitted in his Motion to Expand the Record is not the reliable type needed for the Court to reach the requisite level of

doubt regarding his conviction. *Schlup*, 513 U.S. at 327. To this end, Petitioner submitted a 2005 income tax return, 2006 W-2, and 2008 cable account statement; the collection of which lists three different addresses.[6] (Doc. 18). If anything, this evidence demonstrates Petitioner moved often or at least received mail at more than one location. One address, which was listed on Petitioner's income tax return and W-2, apparently belonged to his mother. (Doc. 13, 185, 265). This evidence is self-reported and although suggestive of residence, is not dispositive. Petitioner even admitted on direct appeal that, "[d]uring the time period alleged in this case, [Petitioner] lived in a trailer home in Hardin County." (Doc 9-1, at 70). Thus, the evidence at issue is not sufficiently reliable.

To the extent the evidence would discredit the victim's testimony, it is still not enough to excuse Petitioner's procedural defaults. Indeed, impeachment evidence is insufficient to justify invoking the fundamental miscarriage of justice exception. *Malcum v. Burt*, 276 F. Supp. 2d 664, 677 (E.D. Mich. 2003); *Harris v. Stegall*, 157 F. Supp. 2d 743, 750-51 (E.D. Mich. 2001); *see also In re Byrd*, 269 F.3d 561, 577 (6th Cir. 2001).

In sum, the evidence, even if considered, is not "exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence"; the type required by *Schlup*. 513 U.S. at 324.

***Evidentiary Hearing***

Finally, Petitioner requests an evidentiary hearing. AEDPA limits a federal court's ability to grant an evidentiary hearing:

---

6. Petitioner also attached a 2010 electric company payment history, which is not relevant to the time period at issue, namely, where Petitioner lived prior to 2008. (Doc. 17-1, at 5).

> (2) If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that-
>
> > (A) the claim relies on-
> >
> > > (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
> > > (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
> >
> > (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2). In *Williams v. Taylor*, the Supreme Court interpreted the opening clause of § 2254(e)(2) to contain its own "diligence" requirement, separate from that of § 2254(e)(2)(A)(ii). 529 U.S. 420, 434-35 (2000). The "failed to develop" clause in § 2254(e)(2) means:

> not whether the facts could have been discovered but instead whether the prisoner was diligent in his efforts. The purpose of the fault component of "failed" is to ensure the prisoner undertakes his own diligent search for evidence. Diligence for purposes of the opening clause depends upon whether the prisoner made a reasonable attempt, in light of the information available at the time, to investigate and pursue claims in state court.

*Id.* at 435. "Diligence" for purposes of § 2254(e)(2) "will require in the usual case that the prisoner, at a minimum, seek an evidentiary hearing in state court in the manner prescribed by state law." *Id.* at 437. If the petitioner fails the diligence requirement of § 2254(e)(2), he is channeled into the strict requirements of subparts (A) and (B). Under those circumstances, a federal court may grant an evidentiary hearing only if the claim relies on "a new rule of constitutional law" or facts "that could not have been previously discovered through the exercise of due diligence"; and "the facts underlying the claim would be sufficient to establish by clear

and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense." 28 U.S.C. § 2254(e)(2)(A) & (B).

In Ohio, the sole means of introducing evidence outside the direct appeal record on a constitutional claim is by filing a petition for post-conviction relief under Revised Code § 2953.21. Although Petitioner filed for post-conviction relief, he did not present new evidence or raise a new constitutional claim. Having reviewed the Petition and Reply, and for the reasons discussed above, the Court finds Petitioner has pointed to no "new rule of constitutional law" or facts "that could not have been previously discovered through the exercise of due diligence." 28 U.S.C. § 2254(e)(2)(A) & (B). As such, Petitioner's motion for an evidentiary hearing should be denied.

### CONCLUSION AND RECOMMENDATION

Following review, the undersigned recommends the Court find Petitioner's claims procedurally defaulted and his Petition be dismissed. The undersigned further recommends the Court deny Petitioner's motion to expand the record (Doc. 18) and his request for an evidentiary hearing.

 s/James R. Knepp, II
United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this notice. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *U.S. v. Walters*, 638 F.2d 947 (6th Cir. 1981).

22